UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

|   |   |   |
|---|---|---|
| | : | |
| VICTOR LAMOND JORDAN, SR., | : | |
|     Plaintiff, | : | |
| | : | |
|     v. | : | No. 3:24-cv-1166 (VAB) |
| | : | |
| CAPTAIN WRIGHT, *et al*, | : | |
|     Defendants. | : | |
| | : | |

**INITIAL REVIEW ORDER**

Victor Jordan, Sr. ("Plaintiff"), a sentenced inmate located at Cheshire Correctional

Institution, has filed a Complaint under 42 U.S.C. § 1983. Mr. Jordan alleges that ten Defendants

violated his federally protected rights, while he was at Garner Correctional Institution.

After initial review, Mr. Jordan may seek damages from Lieutenant John Doe in his

individual capacity on his Fourteenth Amendment procedural due process claim.

All other claims are **DISMISSED**, and all of the other Defendants are terminated from

this case.

**I. BACKGROUND**

Mr. Jordan alleges that his transfer from Cheshire Correctional Institution ("Cheshire") to

Garner Correctional Institution ("Garner") on June 27, 2022, ECF No. 1 ¶ 1, was not processed

in accordance with Connecticut Department Of Correction ("DOC") administrative directives

when he arrived. *See id.* As a result, DOC allegedly did not learn about Mr. Jordan's medical

needs or disabilities or determine whether Mr. Jordan needed accommodations or modifications

for his disabilities. *See id.* Mr. Jordan claims the failure of Garner to assess him "denied [him] a

service." *Id.* ¶ 3.

Lieutenant John Doe also allegedly approached Mr. Jordan, and informed him that he

1

would be placed in "RHU (segregation)." *Id.* When Mr. Jordan allegedly asked him why, Lieutenant Doe allegedly told him "it does not matter[,] you are going." *Id.* Lieutenant Doe allegedly took a "blade[d] stance" towards Mr. Jordan and pulled out his pepper spray to intimidate Mr. Jordan. *Id.* Three or four other correctional officers also allegedly were present with Lieutenant Doe. *Id.* Mr. Jordan allegedly informed these officers to get a camera to record "illegal false imprisonment" and because Mr. Jordan allegedly feared for his safety and security. *Id.*

One of the correctional officers allegedly retrieved a camera and turned it on. *Id.* ¶¶ 4–5. Mr. Jordan then allegedly allowed officers to handcuff him and take him to solitary confinement. *Id.* Mr. Jordan allegedly looked into the camera and stated, "For the record, I did nothing to be placed in solitary (isolated) confinement, and this placement is illegal, and false imprisonment out of retaliation by the [correctional officers] for [an] incident that took place at Cheshire involving myself and other inmates and [correctional officers]." *Id.* ¶¶ 5–6. Lieutenant Doe allegedly could not explain why Mr. Jordan was being placed in solitary confinement. *Id.* ¶ 6.

Mr. Jordan allegedly was never issued an administrative detention form when he was placed in the RHU. *Id.* ¶ 8. The shift commander—Captain Wright—allegedly did not sign off on his placement in the RHU. *See id.* ¶ 9. Captain Wright allegedly was at Cheshire several weeks earlier when Mr. Jordan and several other inmates got into an altercation with correctional officers. *Id.* Captain Wright, who had transferred to Garner a week earlier, allegedly had a previous confrontation with Mr. Jordan when Mr. Jordan allegedly had refused to remove the cover of his cell window. *Id.* ¶ 10.

In October of 2022, Mr. Jordan allegedly submitted a FOI request regarding video of his June placement in the RHU. *Id.* Captain Lugo allegedly responded that there was no video of Mr.

Jordan being placed in the RHU. *Id.* Mr. Jordan allegedly filed another FOI request in December of 2022 seeking the same information. *Id.* ¶ 11. Captain Lugo allegedly denied Mr. Jordan's request. *Id.* In March of 2023, Mr. Jordan allegedly filed several grievances related to the incident preceding his placement in the RHU. *See id.* ¶ 12. District Administrator Rodriguez allegedly denied those grievances in April of 2023. *Id.* ¶ 13.

Mr. Jordan alleges that prison officials violated his rights under the Americans with Disabilities Act ("ADA") and the Rehabilitation Act ("RA") by failing to evaluate Mr. Jordan upon intake and to provide reasonable accommodations to him. *See id.* ¶ 14. Mr. Jordan alleges that his constitutional rights were violated by correctional officers' failure to record and preserve video of Mr. Jordan being taken to the RHU. *See id.* ¶ 15. Mr. Jordan also alleges claims of excessive use of force, deliberate indifference to his medical needs by medical staff, failure to intervene or protect, false imprisonment, retaliation, conspiracy, and violation of his right to procedural due process. *See id.* ¶¶ 16–17. Mr. Jordan seeks monetary damages and declaratory and injunctive relief. ECF No. 1 at 6.

## II. STANDARD OF REVIEW

Under 28 U.S.C. § 1915A(b), district courts must review prisoners' civil complaints against governmental actors and *sua sponte* "dismiss . . . any portion of [a] complaint [that] is frivolous, malicious, or fails to state a claim upon which relief may be granted," or that "seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b); *see also Liner v. Goord*, 196 F.3d 132, 134 & n.1 (2d Cir. 1999) (explaining that, under the Prisoner Litigation Reform Act, *sua sponte* dismissal of frivolous prisoner complaints is mandatory); *Tapia-Ortiz v. Winter*, 185 F.3d 8, 11 (2d Cir. 1999) ("Section 1915A requires that a district court screen a civil complaint brought by a prisoner against a governmental entity or its agents

and dismiss the complaint *sua sponte* if, *inter alia,* the complaint is 'frivolous, malicious, or fails to state a claim upon which relief may be granted.' " (quoting 28 U.S.C. § 1915A)). This standard of review "appl[ies] to all civil complaints brought by prisoners against governmental officials or entities regardless of whether the prisoner has paid [a] filing fee." *Shakur v. Selsky*, 391 F.3d 106, 112 (2d Cir. 2004) (internal quotation marks and citation omitted).

Rule 8 of the Federal Rules of Civil Procedure requires that a plaintiff plead only "a short and plain statement of the claim showing that the pleader is entitled to relief," *see* Fed. R. Civ. P. 8(a)(2), to provide the defendant "fair notice of what the ... claim is and the grounds upon which it rests." *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level" and assert a cause of action with enough heft to show entitlement to relief and "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 555, 570. A claim is facially plausible if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Although the Federal Rules of Civil Procedure do not require "detailed factual allegations," a complaint must offer more than "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement." *Twombly*, 550 U.S. at 555–57. Plausibility at the pleading stage is nonetheless distinct from probability, and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the claim] is improbable, and . . . recovery is very remote and unlikely." *Id.* at 556 (internal quotation marks omitted).

Complaints filed by *pro se* plaintiffs "must be construed liberally and interpreted to raise the strongest arguments that they suggest." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F. 3d 471, 474 (2d Cir. 2006)) (internal quotation marks omitted); *see also Tracy v. Freshwater*, 623 F. 3d 90, 101–02 (2d Cir. 2010) (discussing the "special solicitude" courts afford *pro se* litigants).

## III. DISCUSSION

Following the applicable legal standard under 28 U.S.C. § 1915A, the Court has construed Mr. Jordan's Complaint as alleging the following claims: the Americans with Disabilities Act, ("ADA"), the Rehabilitation Act ("RA"), spoliation of evidence, excessive force, deliberate indifference to medical conditions, failure to intervene or protect, false imprisonment, retaliation, conspiracy, and procedural due process.

The Court will address each of these claims in turn.

### A. The Americans with Disabilities Act Claim

To state a claim under the ADA, the plaintiff must allege that he is a qualified individual with a disability, and that he was excluded from participation in or denied the benefits of services, programs, or activities because of his disability. *Hargrave v. Vermont*, 342 F.3d 27, 24–25 (2d Cir. 2003). The "mistreatment [must have been] motivated by either discriminatory animus or ill will due to disability." *Garcia v. University of Connecticut Health Center*, No. 3:16-cv-852 (JCH), 2016 WL 5844463, at *2 (D. Conn. Sept. 29, 2016). Courts routinely dismiss ADA suits by disabled inmates that allege inadequate medical or mental health treatment but do not allege that the inmate was treated differently because of his disability. *Id. See*, *e.g.*, *Nails v. Laplante*, 596 F. Supp. 2d 475, 481–82 (D. Conn. 2009) (dismissing inmate's ADA claim based on inadequate medical care because plaintiff did not include any non-conclusory allegations of

5

discrimination based on disability and identified no program he was unable to participate in or service he was denied because of his disability). The ADA defines a disability as "a physical or mental impairment that substantially limits one or more major life activities." 42 U.S.C. § 12102(2)(A).

Mr. Jordan alleges he is disabled, *see* ECF No. 1 ¶ 2, but he does not identify his physical or mental impairment or explain how it substantially limits a major life activity. His cursory mention of "[his] disabilities" is too vague and conclusory. *See Iqbal*, 556 U.S. at 678 (holding that a court is not "bound to accept conclusory allegations or legal conclusions masquerading as factual conclusions," *id.*, and "a formulaic recitation of the elements of a cause of action will not do."). Mr. Jordan's ADA claim cannot be premised on him simply alleging that he is "disabled." *See id.* (citing *Twombly*, 550 U.S. at 555) (noting that the Court is not bound to accept "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements").

Similarly problematic is Mr. Jordan's allegation that he was "denied . . . a service." *Id.* ¶ 3. Mr. Jordan does not identify the service denied to him. Because the Court need not accept Mr. Jordan's "[t]hreadbare recitals of the elements of a cause of action," *Iqbal*, 556 U.S. at 678, and because Mr. Jordan's allegation is supported by nothing more than "mere conclusory statements," *id.*, Mr. Jordan has failed to allege enough facts to state a cognizable ADA claim.

Accordingly, Mr. Jordan's ADA claim is dismissed under 28 U.S.C. § 1915A(b)(1).

**B.    The Rehabilitation Act Claim**

The Rehabilitation Act provides, in pertinent part, that "[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination

6

under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency." 29 U.S.C. § 794(a).

In order to establish a *prima facie* case under the Rehabilitation Act, Mr. Jordan must show that (1) he is a qualified individual with a disability; (2) Garner is an entity subject to the Act; and (3) he was denied the opportunity to participate in or benefit from Garner's services, programs, or activities or Garner otherwise discriminated against him by reason of his disability. *See Wright v. N.Y. State Dep't of Corr.*, 831 F.3d 64, 72 (2d Cir. 2016).

Mr. Jordan has also failed to state a claim under the RA. Just as Mr. Jordan has not sufficiently alleged that he is a "qualified individual with a disability," he similarly has not sufficiently alleged that Garner is an entity subject to the Rehabilitation Act. And even if Mr. Jordan adequately alleged the first two elements, he does not allege a denial of an opportunity to participate in or benefit from Garner's services, programs, or activities or Garner otherwise discriminated against him by reason of his disability. *See id.* Thus, Mr. Jordan fails to state a cognizable RA claim.

Accordingly, Mr. Jordan's Rehabilitation Act claim is dismissed under 28 U.S.C. § 1915A(b)(1).

### C. The Spoliation of Evidence Claim

"To the extent that Plaintiff seeks to hold Defendants accountable for any spoliation of evidence, h[is] recourse is to seek sanctions." *Oliver v. City of New York*, No. 1:19-CV-2321 (MKV), 2022 WL 633873, at *3 (S.D.N.Y. Mar. 4, 2022) (citing Fed. R. Civ. P. 37(e) (a party may seek sanctions "[i]f electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery.")). Spoliation of

evidence does not provide a cause of action under § 1983. *See id.* (noting that "Plaintiff conflates a cause of action for the alleged spoliation with *sanctions* for spoliation." (emphasis original)).

Mr. Jordan alleges that prison officials' failure to preserve video of him being led to the RHU violated his constitutional rights. *See* ECF No. 1 ¶ 15. But he does not explain how. *See*, *e.g.*, *Aviles v. Rodriguez*, 2019 WL 5695955, at *6 (D. Conn. Nov. 4, 2019) (dismissing claim that Defendant ignored request to preserve video footage and noting that Plaintiff failed to indicate how his constitutional rights were violated by the failure to preserve the footage); *Hyman v. Holder*, 2001 WL 262665, at * 4–5 (S.D.N.Y. Mar. 15, 2001) (holding that failure of Defendants to create incident report does not violate a constitutional right). Mr. Jordan states that failure to preserve the video "may fall under the 1st[,] 4th[,] 8th, [or] 14th Amendment," ECF No. 1 ¶ 15, but he does not explain how his rights under these constitutional amendments were violated. In any event, to the extent that he has a plausible claim of spoliation of evidence, any such relief can be pursued in this lawsuit, not through a separate legal claim in this lawsuit, as the caselaw provides.

Accordingly, this claim will be dismissed for failure to state a claim under 28 U.S.C. § 1915A(b).

### C. The Excessive Force Claim

To state a claim for use of excessive force in violation of the Eighth Amendment, Mr. Jordan must allege facts establishing objective and subjective components. *See Sims v. Artuz*, 230 F.3d 14, 20–21 (2d Cir. 2000). The objective component focuses on the harm done to the inmate in light of contemporary standards of decency. The amount of harm required depends on the nature of the claim. *Id*. at 21.

Although some degree of injury is usually required, the prisoner need not show that he suffered a significant injury to state a claim for use of excessive force. *See Wilkins v. Gaddy*, 559 U.S. 34, 34 (2010) ("[T]he use of excessive physical force against a prisoner may constitute cruel and unusual punishment [even] when the inmate does not suffer serious injury." (quoting *Hudson v. McMillian*, 503 U.S. 1, 4 (1992))). However, "not 'every malevolent touch by a prison guard gives rise to a federal cause of action.'" *Id*. at 37 (quoting *Hudson*, 503 U.S. at 9). The subjective component of the excessive force standard requires a showing that the use of force was "carried out 'maliciously and sadistically' rather than as a part of a 'good faith effort to maintain or restore discipline.'" *Id*. at 40 (quoting *Hudson*, 503 U.S. at 9).

Mr. Jordan asserts a claim of "excessive [and] unnecessary use of force." ECF No. 1 ¶ 16. This claim presumably relates to Lieutenant Doe taking a "blade[d] stance" and pulling out his pepper spray to intimidate Mr. Jordan before taking Mr. Jordan to the RHU. ECF No. 1 ¶ 4. But Mr. Jordan fails to establish the objective component of an excessive use of force claim under the Eighth Amendment. Mr. Jordan alleges that Lieutenant Doe merely pulled out his pepper spray to intimidate Mr. Jordan before taking him to the RHU. *Id.* ¶ 4. Mr. Jordan does not allege that Lieutenant Doe used the pepper spray on him or that he was harmed by it. "'A threat of force does not constitute excessive force.'" *Dunkelberger v. Dunkelberger*, No. 14-CV-3877 (KMK), 2015 WL 5730605, at *15 (S.D.N.Y. Sept. 30, 2015) (collecting cases). Because Mr. Jordan fails to establish the objective component of an excessive force claim, the Court need not examine the subjective component.

Accordingly, this claim will be dismissed for failure to state a claim under 28 U.S.C. § 1915A(b).

### D. The Deliberate Indifference to Medical Conditions Claim

To state a plausible claim for deliberate indifference under the Eighth Amendment, Mr. Jordan must allege facts "showing the offending official's 'deliberate indifference to [his] serious medical needs.'" *Thomas v. Wolf*, 832 F. App'x 90, 92 (2d Cir. 2020) (quoting *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011)). There are two elements to a claim for deliberate indifference to medical needs.

The first element is objective. The inmate must "show that he was 'actually deprived of adequate medical care' by an official's failure 'to take reasonable measures in response to a [sufficiently serious] medical condition.'" *Id.* (quoting *Salahuddin v. Goord*, 467 F.3d 263, 279–80 (2d Cir. 2006) (internal quotation marks omitted)). Establishing an objectively serious deprivation requires the court to make two separate inquiries.

First, the court must determine whether the inmate "was actually deprived of adequate medical care." *Salahuddin*, 467 F.3d at 279. The medical providers are only required to have "act[ed] reasonably." *Id.* The second inquiry requires the court to determine "whether the inadequacy in medical care is sufficiently serious. This inquiry requires the court to examine how the offending conduct is inadequate and what harm, if any, the inadequacy has caused or will likely cause the prisoner." *Id*. at 280. Thus, although the objective element sometimes is referred to as the seriousness of the medical need, that is only one factor evaluated in determining the seriousness of the deprivation of medical care. *See id.*

The second element is subjective. The inmate must show "that the official acted with a culpable state of mind of 'subjective recklessness,' such that the official knew of and consciously disregarded 'an excessive risk to inmate health or safety.'" *Wolf,* 832 F. App'x at 92 (citations omitted). Allegations constituting negligence or medical malpractice are insufficient to support

an Eighth Amendment deliberate indifference claim. *Id.* (citing *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996)); *see also Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013) ("mere negligence" is insufficient to state a claim for deliberate indifference).

Mr. Jordan's Complaint fails to allege facts sufficient for determining whether the first component of the first element has been established—whether the inmate "was actually deprived of adequate medical care." *Salahuddin*, 467 F.3d at 279. Indeed, Mr. Jordan does not allege in his Complaint that he was deprived of medical care. Therefore, the Court need not consider the second component of the first element or the subjective element of the claim.

Accordingly, this claim will be dismissed for failure to state a claim under 28 U.S.C. § 1915A(b).

### E. The Failure to Intervene or Protect Claim

To state a claim for a prison official's failure to intervene to stop or temper the use of force, a plaintiff must allege facts showing that: "(1) the officer had a realistic opportunity to intervene and prevent the harm; (2) [the officer knew] that the victim's constitutional rights were being violated; and (3) the officer [did] not take reasonable steps to intervene." *Jean-Laurent v. Wilkinson*, 540 F. Supp. 2d 501, 512 (S.D.N.Y. 2008), *aff'd sub nom.*, *Jean-Laurent v. Wilkerson*, 461 F. App'x 18 (2d Cir. 2012). "Liability attaches on the theory that the officer, by failing to intervene, becomes a 'tacit collaborator' in the illegality." *Figueroa v. Mazza*, 825 F.3d 89, 106 (2d Cir. 2016) (quoting *O'Neill v. Krzeminski*, 839 F.2d 9, 11–12 (2d Cir. 1988)).

Mr. Jordan alleges a claim for failure to intervene or protect. *See* ECF No. 1 ¶ 17. This claim presumably relates to other correctional officers' failure to intervene when Lieutenant Doe threatened to pepper spray Mr. Jordan. But, even if Mr. Jordan establishes the first and third element of this cause of action, he fails to allege that Lieutenant Doe's threat to pepper spray him

amounted to a constitutional violation, for the reasons explained above with respect to his excessive force claim. Thus, Mr. Jordan has failed to allege the second element—that the officers knew that the victim's constitutional rights were being violated—to sustain a claim for failure to intervene.

Because his failure to protect claim is analyzed under the same standard as a claim for failure to intervene, that claim too fails. *See*, *e.g*, *Stephens v. Venettozzi*, No. 13-CV-5779 (RA) (DF), 2016 WL 929268, at \*14 (S.D.N.Y. Feb. 24, 2016), *report and recommendation adopted sub nom.*, *Stephens v. Venetozzi*, No. 13 CIV. 5779 (RA), 2016 WL 1047388 (S.D.N.Y. Mar. 10, 2016), and *report and recommendation adopted*, No. 13-CV-5779 (RA), 2016 WL 4272376 (S.D.N.Y. Aug. 5, 2016) (collecting cases) ("Where, as here, a plaintiff alleges that an officer failed to intercede in a presently occurring assault perpetrated by another officer, the claim is properly analyzed under the standard discussed above for failure to intervene in a use of excessive force, rather than under the *Farmer* standard for failure to protect a prisoner from a dangerous condition of confinement.").

Accordingly, this claim will be dismissed for failure to state a claim under 28 U.S.C. § 1915A(b).

### F. The False Imprisonment Claim

"[A] plaintiff may not plausibly allege false imprisonment when he is lawfully in prison custody." *Blango v. Ludovico*, No. 3:23-CV-00212 (SVN), 2024 WL 988164, at \*18 (D. Conn. Mar. 7, 2024) (citing *McGowan v. United States*, 94 F. Supp. 3d 382, 390 (E.D.N.Y. 2015), aff'd, 825 F.3d 118 (2d Cir. 2016) ("If a private or state actor is entitled to hold a prisoner, liability for false imprisonment never rises or falls based on the conditions under which he is held. . . . The inquiry ends, at least for purposes of the tort of false imprisonment, upon the

finding that some form–any form–of confinement was legally permitted."). *See also Cohen v. United States*, 640 F. Supp. 3d 324, 345 (S.D.N.Y. 2022), *aff'd sub nom.*, *Cohen v. Trump*, No. 23-35, 2024 WL 20558 (2d Cir. Jan. 2, 2024) (observing that "a prisoner serving a term of incarceration in prison would not have a claim for false imprisonment for his transfer from one cell to another, or even from standard conditions to solitary confinement. . . .").

Mr. Jordan nevertheless has alleged a claim for false imprisonment. ECF No. 1 ¶ 17. Yet, he has not alleged that he is unlawfully imprisoned on the underlying criminal charges giving rise to his current custody with the DOC. Instead, his alleged false imprisonment claim rests on the conditions or location of his confinement within DOC custody.

Accordingly, in the absence of any allegations suggesting that Mr. Jordan is not lawfully in prison custody, this claim must be dismissed for failure to state a claim. 28 U.S.C. § 1915A(b).

### G. The Retaliation Claim

"To state a claim for retaliation, an inmate must demonstrate (1) he or she was engaged in constitutionally protected activity, (2) the defendant took adverse action against the plaintiff, and (3) there was a causal connection between the protected speech and the adverse action in that the alleged conduct was substantially motivated by the protected activity." *Gill v. Riddick*, No. CIV. 9:03-CV-1456, 2005 WL 755745, at *8 (N.D.N.Y. Mar. 31, 2005).

Mr. Jordan alleges a claim for retaliation. *See* ECF No. 1 ¶ 17. Liberally construing his Complaint, the Court interprets this claim as an allegation that Mr. Jordan was placed in the RHU in retaliation for "g[etting] into an altercation" with correctional officers at his previous prison. *See* ECF No. 1 ¶¶ 9–10. But Mr. Jordan had failed to allege the first element because getting into an altercation with correctional officers is not a constitutionally protected activity.

*See Jackson v. Dzurenda*, No. 3:11-CV-1668 RNC, 2012 WL 5448330, at \*2 (D. Conn. Nov. 7, 2012) (concluding that "[a]n inmate's assault on an officer plainly does not constitute protected activity.").

Accordingly, this claim will be dismissed for failure to state a claim under 28 U.S.C. § 1915A(b).

### H. The Conspiracy Claim

"To prove a conspiracy to violate civil rights under 42 U.S.C. § 1983, a plaintiff must show: '(1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages.'" *Pal v. Canepari*, No. 3:20-cv-13 (MPS), 2023 WL 2712371, at \*22 (D. Conn. Mar. 30, 2023) (quoting *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999)). Plaintiff must allege facts showing "'that defendants entered into an agreement, express or tacit, to achieve the unlawful end.'" *Forte v. City of New York*, No. 16-CV-560 (VSB), 2023 WL 6259652, at \*10 (S.D.N.Y. Sept. 26, 2023) (quoting *Webb v. Goord*, 340 F.3d 105, 110 (2d Cir. 2003)).  A claim of conspiracy cannot be grounded on conclusory or vague allegations. *Id*.  Plaintiff must also identify the constitutional right violated. *See id*. (observing "where a plaintiff fails to plead a constitutional violation, a conspiracy claim based on the unsubstantiated constitutional violation must fail as well." (citing cases)). While Mr. Jordan alleges a conspiracy claim, *see* ECF No. 1 ¶ 17, he fails to allege that there was any agreement between prison officials to act together to violate his constitutional rights. As a result, his claim of conspiracy is wholly grounded on conclusory or vague allegations.

Furthermore, this claim is barred by the intracorporate conspiracy doctrine. That doctrine "provides that employees or agents of a single corporate entity, acting within the scope of their

employment, are legally incapable of conspiring together." *Ali v. Connick*, 136 F. Supp. 3d 270, 282 (E.D.N.Y. 2015). Although the Second Circuit has not yet applied the doctrine in § 1983 cases, district courts within the Second Circuit have done so. *See Baltas v. Dones*, No. 3:22-CV-38 (MPS), 2022 WL 1239989, at *7 (D. Conn. Apr. 27, 2022) (dismissing conspiracy claims under intracorporate conspiracy doctrine); *Vega v. Artus*, 610 F. Supp. 2d 185, 205–06 (N.D.N.Y. 2009) (dismissing conspiracy claim under intracorporate conspiracy doctrine where all defendants were correctional employees acting within the scope of their employment); *see also Williams v. Korines*, No. 9:16-CV-1157 (FJS) (TWD), 2018 WL 4521204, at *5 n.1 (N.D.N.Y. Sept. 21, 2018) (concluding that intracorporate conspiracy doctrine applied to an inmate's Section 1983 conspiracy claim).

There is an exception to the intracorporate conspiracy doctrine when individuals are "pursuing personal interests wholly separate and apart from the entity." *Ali*, 136 F. Supp. 3d at 282–83 (citation and internal quotation marks omitted). Simple allegations that the defendants were motivated by personal bias, however, are insufficient to support the exception. *See Vega*, 610 F. Supp. 2d at 205 (holding that "in order to allege facts plausibly suggesting that individuals were pursuing personal interest wholly separate and apart from the entity" to overcome the intracorporate conspiracy doctrine, "more is required of a plaintiff than simply alleging that the defendants were motivated by personal bias against plaintiff."). Conduct meeting the exception must show officers working against, not for departmental interests. *See, e.g.*, *Mazyck v. Keller*, 531 F. Supp. 3d 630, 647 (W.D.N.Y. 2021) (finding sufficient allegations to invoke exception where plaintiff alleged that defendants fabricated evidence to cover up actions of a third defendant and those actions were not related to corporate policy or management decisions); *Brown v. Annucci*, No. 19-CV-9048 (VB), 2021 WL 860189, at *10–11 (S.D.N.Y. Mar. 8, 2021)

(defendants "us[ed] excessive force and then agree[d] to cover up the alleged assault by manipulating or destroying evidence").

All Defendants in this action are, or were, correctional employees, and Mr. Jordan alleges that all Defendants were acting under color of state law. *See* ECF No. 1 at 2–3. As Mr. Jordan alleges no facts suggesting that defendants were acting against departmental interests, the intracorporate conspiracy doctrine bars this claim. *See Jordan v. Dep't of Correction*, No. 3:23-CV-855 (VAB), 2023 WL 6541585, at *11–12 (D. Conn. Oct. 6, 2023).

Accordingly, this claim will be dismissed for failure to state a claim under 28 U.S.C. § 1915A(b).

## I. The Procedural Due Process Claim

The Fourteenth Amendment to the United States Constitution provides that a State shall not "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. The standard analysis for a claim of a violation of procedural due process "proceeds in two steps: We first ask whether there exists a liberty or property interest of which a person has been deprived, and if so we ask whether the procedures followed by the State were constitutionally sufficient." *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011) (*per curiam*).

The Constitution itself does not give an inmate a liberty interest in avoiding more restrictive confinement such as the administrative segregation at issue in this case. *Wilkinson v. Austin,* 545 U.S. 209, 221–22 (2005). But state policies regarding conditions of confinement may create a liberty interest in avoiding more restrictive confinement. *Id.* Such an interest may arise if "statutes or regulations require, in 'language of an unmistakably mandatory character,' that a prisoner not suffer a particular deprivation absent specified predicates." *Tellier v. Fields,* 280 F.3d 69, 81 (2d Cir.2000) (quoting *Welch v. Bartlett,* 196 F.3d 389, 392 (2d Cir. 1999)).

16

Mr. Jordan does not specifically raise a procedural due process claim related to his placement in the RHU, but "[p]ro se submissions are reviewed with 'special solicitude,' and 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" *Bloodywone v. Bellnier*, 778 F. App'x 52, 53 (2d Cir. 2019) (quotation omitted). As a result, Mr. Jordan's statement to officers that he "'did nothing to be placed in solitary (isolated) confinement,'" ECF No. 1 ¶ 5, Lieutenant Doe's inability to explain why Mr. Jordan was being placed there, *see id.* ¶ 6, and prison officials' failure to provide Mr. Jordan with an administrative detention form, *see id.* ¶ 8, collectively suggest that Mr. Jordan may have been placed in solitary confinement without procedural due process.

Here, the Department of Correction's own Administrative Directive 9.4 (Restrictive Status) creates liberty interests. These regulations provide for several different types of restricted confinement, including administrative detention, which appears to be a short-term placement pending decisions about where to place inmates that may need restricted placements, and administrative segregation, which is potentially a more permanent restricted placement. Mr. Jordan's Complaint does not specify whether he was placed in administrative detention or administrative segregation. But Mr. Jordan has a state-created liberty interest in avoiding either placement. *See Walker v. Quiros*, No. 3:11-CV-00082 (MPS), 2014 WL 7404550, at *8 (D. Conn. Sept. 30, 2014).

Because Mr. Jordan has a state-created liberty interest in avoiding placement in administrative detention or administrative segregation, the question is "whether the procedures followed by the State [in placing him there] were constitutionally sufficient." *Swarthout*, 562 U.S. at 219. "[T]he decision[ ] to place an inmate in administrative or punitive segregation must

be based on 'some evidence.'" *Wilson v. Connecticut Dep't of Corr.*, No. 3:20CV1567 (MPS), 2020 WL 7388979, at *12 (D. Conn. Dec. 16, 2020).

Construed broadly, Mr. Jordan's statement to officers that he "'did nothing to be placed in solitary (isolated) confinement,'" ECF No. 1 ¶ 5, Lieutenant Doe's inability to explain why Mr. Jordan was being placed there, *see id.* ¶ 6, and prison officials' failure to provide Mr. Jordan with an administrative detention form, *see id.* ¶ 8, raise an inference that Mr. Jordan was placed in the RHU without "some evidence." Thus, the Court construes Mr. Jordan's allegations liberally to raise an inference that his placement in the RHU was not in compliance with procedural due process.

Accordingly, the Court will permit this claim to proceed for further development of the record.

### J. Requested Relief

A plaintiff seeking monetary damages from a defendant must allege facts that establish the personal involvement of that defendant in the alleged constitutional violation. *See Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) ("personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983."). This is true with respect to supervisory officials, as well. *Tangreti v. Bachman*, 983 F.3d 609, 620 (2d Cir. 2020) ("To hold a state official liable under § 1983, a plaintiff must plead and prove the elements of the underlying constitutional violation directly against the official without relying on a special test for supervisory liability."). The Second Circuit has held that "there is no special rule for supervisory liability." *Id.* at 618. Rather, "[t]o hold a state official liable under § 1983, a plaintiff must plead and prove the elements of the underlying constitutional violation directly against the official without relying on a special test for supervisory liability." *Id.* at 620. Thus, the plaintiff

"must plead and prove 'that each Government-official defendant, through the official's own individual actions, has violated the Constitution.'" *Id.* at 616 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009)). A supervisor's mere knowledge of a constitutional violation is insufficient to establish personal involvement. *See id.* 616–17 (noting that "[a] supervisor's 'mere knowledge of his subordinate's discriminatory purpose' is not sufficient because that knowledge does not 'amount[ ] to the supervisor's violating the Constitution.'" (quoting *Iqbal*, 556 U.S. at 676)).

Mr. Jordan has sued ten Defendants for damages and declaratory and injunctive relief: Captain Wright, Lieutenant John Doe, three John Doe correctional officers, Captain Jackson, District Administrator Rodriguez, Warden Washington, the Garner Mental Health Department supervisor, and the Garner Medical Department supervisor. *See* ECF No. 1 at 2–3, 6.

Mr. Jordan does not specify, however, whether he sues these Defendants in their official or individual capacity. To the extent he asserts official capacity claims for monetary damages against Defendants (all state employees) on his procedural due process claim, any such claim is dismissed as barred by the Eleventh Amendment. *See e.g.*, *Kentucky v. Graham*, 473 U.S. 159, 169 (1985) ("[A]bsent waiver by the State or valid congressional override, the Eleventh Amendment bars a damages action against a State in federal court. This bar remains in effect when State officials are sued for damages in their official capacity." (citations and footnotes omitted)). Thus, the Court considers only whether Mr. Jordan has sufficiently alleged a claim against any defendant in his or her individual capacity for damages on his procedural due process claim.

Mr. Jordan has sufficiently alleged the personal involvement of Lieutenant John Doe, who placed Mr. Jordan in the RHU without procedural due process. ECF No. 1 ¶¶ 7–8. The three John Doe correctional officers may have been there when that happened, *see id.* ¶ 4, but merely

being present when a constitutional violation occurs is insufficient to establish personal involvement. *See Snead v. City of New York*, 463 F. Supp. 3d 386, 399–400 (S.D.N.Y. 2020) ("An officer's mere presence at the scene of [the alleged constitutional violation] generally does not constitute sufficient personal involvement for § 1983 liability.") (collecting cases).

Accordingly, the three John Doe correctional officers cannot be sued in their individual capacity.

The remaining individual defendants are Captain Wright, Captain Jackson, District Administrator Rodriguez, Warden Washington, and supervisors of the Mental Health and Medical Departments, *see* ECF No. 1 at 3—all supervisory prison officials. Mr. Jordan has failed to show that these individuals had any personal involvement in placing him in the RHU without procedural due process.

Mr. Jordan alleges that Captain Wright—the shift commander—did not sign off on his placement in the RHU. *See id.* ¶ 9. Mr. Jordan alleges that Captain Jackson, as the unit manager of Fox Unit RHU during Mr. Jordan's "illegal imprisonment," was "responsible for what occurs in her unit, to whatever extent it applies." ECF No. 1 ¶ 18. Mr. Jordan makes no specific claims against the supervisors of the Mental Health and Medical Departments related to his placement in the RHU.

Captains Wright and Jackson thus had no personal involvement in placing Mr. Jordan in the RHU without due process. Neither did supervisors from the Mental Health and Medical Departments. "Simply being a supervisor is not enough to impute personal involvement onto a defendant; liability exists only where the 'defendant, through the official's own individual actions, has violated the Constitution.'" *Hamlett v. Everly*, No. 21-CV-6663 (NSR), 2024 WL 1892265, at *7 (S.D.N.Y. Apr. 30, 2024) (quoting *Tangreti*, 983 F.3d at 618) (quotation omitted)). *See also*

*Taylor v. Small*, No. 22-CV-2762 (NSR), 2024 WL 1605066, at *4 (S.D.N.Y. Apr. 11, 2024) (mere fact that defendant was supervising the SHU when prisoner intentionally cut himself was not enough to demonstrate her personal involvement because there is no *respondeat superior* liability under § 1983) (citing *Tangreti*, 983 F.3d at 618; *Al–Jundi v. Estate of Rockefeller*, 885 F.2d 1060, 1065 (2d Cir. 1989)).

Mr. Jordan does not allege that District Administrator Rodriguez and Warden Washington were involved in placing him in the RHU without procedural due process. Mr. Jordan cannot establish these two defendants' personal involvement "merely because [they] held a high position of authority." *Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996) (citing *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir. 1994); *Leonhard v. United States*, 633 F.2d 599, 621 n.30 (2d Cir. 1980) (claim based on *respondeat superior* not cognizable under § 1983)). *See*, *e.g.*, *Magassouba v. City of New York*, No. 23-CV-3686 (KMK), 2024 WL 2979825, at *4 (S.D.N.Y. June 12, 2024) (citing *Tangreti*, 983 F.3d at 618; *Black*, 76 F.3d at 74) (concluding that District Attorney was not personally involved in alleged malicious prosecution brought by subordinate Assistant District Attorneys). Any claims for damages against the supervisory officials must be dismissed. Mr. Jordan is only permitted to sue Lieutenant John Doe for damages in his individual capacity.

While the plaintiff cannot sue defendants in their official capacity for damages, *see supra*, the Eleventh Amendment does not preclude suits against state officials acting in their official capacity that seek prospective injunctive relief. *See Ex parte Young*, 209 U.S. 123, 155–56 (1908) ("[I]ndividuals who, as officers of the state, are clothed with some duty in regard to the enforcement of the laws of the state, and who threaten and are about to commence proceedings, either of a civil or criminal nature, to enforce against parties affected an

unconstitutional act, violating the Federal Constitution, may be enjoined by a Federal court of equity from such action."). Moreover, a plaintiff's claim for injunctive relief does not require personal involvement, as required for a damages claim. *See Smith v. Muccino*, 223 F.Supp.2d 396, 403 (D. Conn. 2002) ("[P]ersonal involvement is not a prerequisite to injunctive relief, and such relief may be had against officers in their official capacity.").

Mr. Jordan seeks declaratory and injunctive relief requiring DOC employees to wear body cameras to record incidents in the prison. *See* ECF No. 1 at 6. While a plaintiff may proceed for injunctive relief against a defendant in his or her official capacity, he may only do so only to the extent he alleges an ongoing constitutional violation. *See Virginia Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 254–55 (2011) (citing *Ex parte Young*, 209 U.S. 123 (1908)). "In the prison context, a request for injunctive relief must always be viewed with great caution so as not to immerse the federal judiciary in the management of state prisons." *Fisher v. Goord*, 981 F. Supp. 140, 167 (W.D.N.Y. 1997) (citing *Farmer v. Brennan*, 511 U.S. 825, 846–47 (1994)). Federal courts can order prospective relief "in any civil action with respect to prison conditions," provided it "extend[s] no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs." 18 U.S.C. § 3626(a). When awarding injunctive relief, a court must make sure that such relief is narrowly tailored to the scope of the violation and extends no further than necessary to remedy the violation. *Brown v. Plata*, 563 U.S. 493, 531 (2011). Thus, a court should reject "remedial orders that unnecessarily reach out to improve prison conditions other than those that violate the Constitution." *Id.* (citing *Lewis v. Casey*, 518 U.S. 343, 357 (1996)).

Here, there is no allegation of an ongoing constitutional violation. Mr. Jordan does not allege, nor does the Complaint suggest, that he is still being held in the RHU without procedural

due process. Even if he were, requiring officers prison-wide to wear body cameras in the future would extend further than necessary to remedy the violation. *Brown*, 563 U.S. at 531 (citing 18 U.S.C. § 3626(a)) (noting that "[t]he PLRA states that no prospective relief shall issue with respect to prison conditions unless it is narrowly drawn, extends no further than necessary to correct the violation of a federal right, and is the least intrusive means necessary to correct the violation."). The relief that Mr. Jordan requests is intended to improve prison conditions generally. The Court cannot order such relief. *See id.*

Accordingly, Mr. Jordan's claims for declaratory or injunctive relief will be dismissed.

## IV. ORDERS

Mr. Jordan may seek damages from Lieutenant John Doe in his individual capacity on his Fourteenth Amendment procedural due process claim.

All other claims are **DISMISSED**, and all of the other Defendants are terminated from this case.

The Clerk of Court is respectfully directed to remove from the caption the following individuals: Captain Wright, John Doe correctional officers, Captain Jackson, District Administrator Rodriguez, Warden Washington, the Garner Mental Health Department supervisor, and the Garner Medical Department supervisor.

The Court enters the following additional orders.

**(1)** The Clerk of Court shall verify the current work address of Lieutenant John Doe with the Department of Correction Legal Affairs Unit. The Clerk of Court shall mail a copy of the Complaint, this order, and a waiver of service of process request packet to Lieutenant Doe in his individual capacity at his confirmed address by **August 30, 2024**. On the thirty-fifth (35th) day after mailing, but no later than **September 13, 2024,** the Clerk of Court shall report to the Court

on the status of the requests. If Lieutenant Doe fails to return the waiver request, the Clerk of

Court shall arrange for in-person service by the U.S. Marshals Service and Lieutenant Doe shall

be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure

4(d).

**(2)** Lieutenant Doe shall file his response to the Complaint, either an Answer or motion to

dismiss, by **November 8, 2024**. If Lieutenant Doe chooses to file an Answer, he shall admit or

deny the allegations and respond to the cognizable claims recited above. He may also include

any and all additional defenses permitted by the Federal Rules.

**(3)** Discovery, under Federal Rules of Civil Procedure 26 through 37, shall be completed

by **May 9, 2025**. Discovery requests need not be filed with the Court.

**(4)** All motions for summary judgment shall be filed by **June 13, 2025.**

**(5)** If Mr. Jordan changes his address at any time during the litigation of this case, Local

Court Rule 83.1(c)2 provides that he MUST notify the Court. Failure to do so can result in the

dismissal of the case. Mr. Jordan should write PLEASE NOTE MY NEW ADDRESS on the

notice. Putting a new address on a letter without indicating that it is a new address is insufficient.

If Mr. Jordan has more than one pending case, he should indicate all case numbers in the

notification of change of address. Mr. Jordan should also notify the attorney for Lieutenant Doe

of his new address.

**(6)** Mr. Jordan shall utilize the Prisoner E-filing Program when filing documents with the

Court. Mr. Jordan is advised that the Program may be used only to file documents with the

Court. Local Court Rule 5(f) provides that discovery requests are not to be filed with the Court.

Therefore, discovery requests must be served on Lieutenant Doe's counsel by regular mail.

**(7)** The Clerk of Court shall immediately enter the District of Connecticut Standing Order Re: Initial Discovery Disclosures concerning cases initiated by self-represented inmates and shall send a copy of the Standing Order to the parties. The order also can be found at http://ctd.uscourts.gov/district-connecticut-public-standing-orders.

**(8)** The Clerk of Court shall send a courtesy copy of the complaint, and this order to the Connecticut Attorney General and the Department of Correction Legal Affairs Unit.

SO ORDERED.

Dated this 9th day of August, 2024 at New Haven, Connecticut.

      /s/ Victor A. Bolden

Victor A. Bolden
United States District Judge